IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Christine M. Arguello**

Civil Action No. 09-cv-00012-CMA-BNB

SHARON BAROS,

    Plaintiff,

v.

ADVANTAGE LOGISTICS USA WEST, LLC, a Delaware corporation,

    Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

This matter is before the Court on Plaintiff Sharon Baros's Motion for Partial Summary Judgment (Doc. # 19) and Defendant Advantage Logistics USA West's Motion for Summary Judgment (Doc. # 21). This action concerns Plaintiff's common law public policy claim, arising from her alleged retaliatory termination after she applied for, and received, workers' compensation benefits under the Workers' Compensation Act of Colorado, Colo. Rev. Stat. § 8-40-101, *et seq*. Jurisdiction is proper pursuant to 28 U.S.C. § 1332.

## I. BACKGROUND[1]

From March 13, 2000 until November 2005, Plaintiff was employed at a grocery distribution center in Fountain, Colorado. Until October 10, 2004, the grocery distribution center's operations were overseen by a third party, Matrix Logistics. Thereafter, Defendant Advantage Logistics took over operations, as a contracted logistics provider.

During Plaintiff's employment, she filled various positions at the distribution center. She began her employment as a Unit Picker and, at times, worked as a Case Picker. In both positions, Plaintiff pulled items from the warehouse shelves, which would ultimately be sent to grocery stores. However, as a Case Picker, Plaintiff's duties entailed riding a pallet rider and pulling cases of product from pallets. In contrast, as a Unit Picker, Plaintiff pushed a cart along the warehouse aisles and placed individual items in a tote. When the tote reached capacity, it was sealed and placed on a conveyor belt. The maximum final load of the tote is 44 pounds.

According to a Physical Demands Evaluation ("PDE") prepared by a third party, the physical demands of the Unit Picker position is rated "medium", meaning that the job requires occasional exertion of 20-50 pounds of force and frequent exertion of 10-25 pounds of force.

---

[1] Unless otherwise noted, the following facts are undisputed and are taken from the parties' pleadings, briefs, and attached exhibits.

In December 2002, while working as a Case Picker, Plaintiff reported work-related injuries to her neck and back.  Plaintiff was treated by Dr. Bert Bergland, the company doctor, and returned to full duty in January 2003.  Plaintiff again reported injuries in February 2003.  Dr. Bergland again treated Plaintiff, and, in April 2003, placed Plaintiff on a ten pound lifting restriction.  Consequently, Plaintiff was transferred to a "light" duty position on the "cigarette loop," which entailed stamping cigarette cartons.  Based on the record before the Court, the ten pound lifting restriction does not appear to have ever been lifted.  In both instances, Plaintiff pursued workers' compensation claims.

In May 2003, Plaintiff switched primary treatment providers from Dr. Bergland to Dr. Kenneth Finn, who treated Plaintiff through July 2005.  Though Dr. Finn concluded that Plaintiff's injuries were work-related, he did not issue any work restrictions because Dr. Bergland had imposed a ten-pound restriction.

When Defendant took over the distribution center's operations from Matrix Logistics in October 2004, Defendant's Operations Manager, John Woods, determined that a number of alternative or "light" duty positions that were intended to be temporary had, in actuality, become permanent positions.  Soon thereafter, Defendant decided to eliminate permanent alternative duty positions, which included Plaintiff's position on the cigarette loop.

In December 2004, Plaintiff was granted a leave of absence to obtain additional medical treatment.  Upon her return to work in mid-January 2005, Plaintiff was required

3

to provide evidence that she could perform a regular warehouse position, as opposed to a light duty position. On or around January 20, 2005, Dr. Finn provided Plaintiff with a letter indicating he had not placed Plaintiff on work restrictions. Defendant, who subsequently allowed Plaintiff to apply for and obtain a Unit Picker position, was unaware of the Dr. Bergland-imposed restrictions or Dr. Finn's reliance thereon.

As part of Plaintiff's ongoing workers' compensation case, a functional capacity examination ("FCE") was performed by a third party in February 2005. The FCE concluded that Plaintiff was capable of performing light duty positions. However, the Unit Picker position is classified as a medium duty position. A copy of the FCE was sent to the distribution center. According to Defendant's Operations Manager, John Woods, he did not learn of the contents of the FCE until several months later, in September 2005 because Matrix Logistics – not Defendant – handled Plaintiff's workers' compensation claims.

In July 2005, Dr. Finn determined that Plaintiff had reached Maximum Medical Improvement ("MMI") and provided Plaintiff with a 24% whole person impairment as a result of her workplace injuries. Also in July, Dr. Finn completed a Certification of Health Care Provider form in which he concluded that Plaintiff could work in a sedentary capacity that required only occasional lifting of up to ten pounds. In September 2005, Plaintiff settled her workers' compensation claim for $60,000. Operations Manager Woods subsequently sought Dr. Bergman's medical opinion concerning whether Plaintiff's permanent impairment would prevent her from being able to perform her

duties as a Unit Picker. Based upon the FCE's light duty restrictions and Plaintiff's other records, Dr. Bergland concluded that Plaintiff could not perform the Unit Picker position without placing herself at risk of re-injury.[2] Further, Plaintiff's own medical provider, Dr. Finn, has since opined that, given Plaintiff's physical limitations, as set forth in the FCE, and the job's physical demands, as set forth in the PDE, Plaintiff would not be able to perform the essential duties of the Unit Picker position. Indeed, as Plaintiff admits, from February 2005 through her termination, she regularly took prescription pain medication and muscle relaxers during and after her shift to help her deal with back and neck pain so that she could complete her assigned duties.

Upon determining that Plaintiff could no longer remain in her position as Unit Picker, Operations Manager Woods met with union representatives to determine whether there were other positions that Plaintiff could perform. Defendant was informed that no positions were available. Consequently, Plaintiff was terminated, effective November 23, 2005.

---

[2] Dr. Bergland's conclusions were later confirmed by John Ogrodnick, M.D., an expert physician retained by Defendant. Dr. Ogrodnick opined that he would have placed Plaintiff on a maximum frequent-lifting restriction of 32 pounds, based upon the FCE. (Doc. # 21, Ex. M.)

## II.  PROCEDURAL HISTORY

Plaintiff initiated this action against Defendant in the District Court of the State Colorado, El Paso County on or before December 15, 2008. (Doc. #1 at 1). On January 1, 2009, the case was removed to the United States District Court for the District of Colorado. (*Id.*)

On October 16, 2009, Plaintiff filed the instant Motion for Partial Summary Judgment and Legal Argument/Authority in Support. (Doc. # 19.) Defendant responded on November 6, 2009 (Doc. # 24) and Plaintiff replied on November 23, 2009 (Doc. # 26). Plaintiff seeks "partial summary judgment on liability".

Also on October 16, 2009, Defendant filed a Motion and Brief in Support of Motion for Summary Judgment. (Doc. # 21.) Plaintiff responded on November 5, 2009 (Doc. # 23), and Defendant replied on November 20, 2009 (Doc. # 25). In pertinent part, Defendant argues that no causal connection exists between Plaintiff's workers' compensation filings and settlement and the loss of her job.

More than one year prior to Plaintiff's initiation of the instant action, Plaintiff filed a complaint against Defendant, Advantage Logistics, and Matrix Logistics, Inc., which prior to Advantage, operated the Fountain, Colorado distribution center. (Case No. 07-cv-1109, Doc. #1). That action also arose from Plaintiff's termination. In pertinent part, Plaintiff stated claims for violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, (which claim is not alleged in the instant action) and for violation of public policy, due to her alleged retaliatory termination (which claim is

alleged in the instant action). (Case No. 07-cv-1109, Doc. # 1 at 5-7.) On April 18, 2008, Defendant Advantage Logistics filed a Motion for Summary Judgment and accompanying Brief (Case No. 07-cv-1109, Doc. ## 35, 36). On August 27, 2008, after Defendant's motion was fully briefed, United States District Judge Lewis T. Babcock granted Defendant's motion in connection with Plaintiff's ADA claim, but declined to exercise supplemental jurisdiction over Plaintiff's retaliatory termination claim (the "August 2008 Summary Judgment Order"). (Case No. 07-cv-1109, Doc. # 55 at 13, 14.)

### III. COLLATERAL ESTOPPEL

At the outset, the Court notes that, in contravention of collateral estoppel doctrine, Plaintiff attempts to re-litigate the following two issues that were soundly decided by Judge Babcock in his August 2008 Summary Judgment Order: (1) that Dr. Finn deemed work restrictions unnecessary and (2) that Woods, Defendant's Operations Manager, along with Bob Reinhardt[3], Defendant's Safety Supervisor, attempted to improperly influence Dr. Bergland's medical opinion. In his August 2008 Summary Judgment Order, Judge Babcock ruled on the first issue as follows:

> Plaintiff points me to no evidence showing Dr. Bergland's restrictions were lifted by Dr. Finn. To the contrary, Dr. Finn – as late as January 2005 – noted Plaintiff was working with a ten pound lifting limitation and did not lift the restriction at that time.

---

[3] In the records before the Court, Mr. Reinhardt's surname has also been spelled "Rhinehart." The Court presumes that the correct spelling is "Reinhardt," as reflected in Doc. # 19, Ex. 15, which is a fax cover sheet from "Bob Reinhardt" to "Dr. Bergland."

(Doc. # 21-2 at 5[4]; *see also* Case No. 07-cv-1109, Doc. # 55 at 12.) On the second issue, Judge Babcock ruled as follows:

> Plaintiff's evidence of "interference" again amounts to no more than mere speculation and does not raise a material question of fact whether Defendant attempted to influence Dr. Bergland in this case[.]

(Doc. # 21-2 at 6; *see also* Case No. 07-cv-1109, Doc. # 55 at 12.)

As stated by the United States Supreme Court, collateral estoppel, or issue preclusion, "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443 (1970); *see also Carpenter v. Young*, 773 P.2d 561, 565 n.5 (Colo. 1989) ("Issue preclusion prevents relitigation of a factual or legal matter that was previously litigated and decided.") An "ultimate fact" is a "fact essential to the claim or the defense." BLACK'S LAW DICTIONARY 269 (2d pocket ed. 2001). Collateral estoppel applies when the following four elements have been established:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Harrison v. Potash, Inc.*, 248 F.3d 1014, 1022 (10th Cir. 2001); *see also Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 84-85 (Colo. 1999) (en banc). "An issue

---

[4] All page number references are to the CM/ECF docketing system.

decided on a motion for summary judgment may collaterally estop relitigation of that issue in the subsequent proceeding." *Id*. at 85 (citing *Carpenter*, 773 P.2d at 564-68).

Without citing to any case law, Plaintiff contends that collateral estoppel does not apply because Judge Babcock did not rule on the merits of Plaintiff's common law retaliation claim, which elements are different from the elements of her ADA claim, upon which Judge Babock did rule. However, Plaintiff's argument is unavailing. The two facts at issue are essential to both Plaintiff's already-decided ADA claim and the instant retaliation claim. Both parties in the instant action were parties in the action before Judge Babcock and had a full and fair opportunity to litigate the aforementioned two issues. Soon after Judge Babcock's August 2008 Summary Judgment Order, Final Judgment was entered in Defendant's favor. (*See* Case No. 07-cv-1109, Doc. # 56.) At no time did Plaintiff appeal Judge Babcock's August 2008 Summary Judgment Order, seek reconsideration, or otherwise suggest errors in judgment.

The court is unaware of, and Plaintiff has not pointed to, any applicable precedent where ultimate factual issues decided in connection with the summary judgment of one claim (here, Plaintiff's prior ADA claim) should not apply to subsequent litigation of another claim (here, Plaintiff's common law retaliation claims) arising from the same set of facts or occurrences.

## IV. STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Fed. R. Civ. P. 56(c) provides that summary judgment shall be granted if "the pleadings, the discovery and disclosure of materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson*, 477 U.S. at 252. When considering cross-motions for summary judgment, the court must view the evidence in a light most favorable to the party opposing the motion under consideration. *See, e.g., Besso v. Cummins Intermountain, Inc.*, 885 F. Supp. 1516, 1520 (D. Wyo. 1995); 11 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE, § 56.10[6] at 56-85, 86 (3d ed. 2010) ("In practice [ ] a cross-motion for summary judgment operates exactly like a single summary judgment motion.") Any factual ambiguities must be resolved in favor of the

nonmovant, thus favoring the right to trial. *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

"The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). The "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] by simply pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671.

After the movant has met its initial burden, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of the claim such that a reasonable jury could find in its favor. *See Anderson*, 277 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which, as mentioned, the Court views in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). However, conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

## V. ANALYSIS

The Court will first consider Defendant's Motion for Summary Judgment and, therefore, view all facts in the light most favorable to Plaintiff.

In her Complaint, Plaintiff alleges that Defendant terminated her, in violation of public policy, in retaliation for her $60,000 settlement of workers' compensation claims and Defendant's fear "that Plaintiff would make workers' compensation claims in the future." (Doc. # 1-3, ¶ 26.)

The Workmen's Compensation Act of Colorado, Colo. Rev. Stat. §§ 8-40-101 through 8-66-112, is "designed to provide an employee, who is injured in the course and scope of his employment, medical treatment and compensation for the temporary and permanent loss of income resulting from the employee's temporary or permanent disability." *Lathrop v. Entenmann's, Inc.*, 770 P.2d 1367, 1372 (Colo. App. 1989) (citing *Cronk v. Intermountain Rural Elec. Ass'n*, 765 P.2d 619 (Colo. App. 1988)); *see also Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 108 (Colo. 1992) (citing *Lathrop* with approval). Employers have a publicly-imposed duty to compensate employees for work-related injuries, and employees have a statutory right to such compensation. *Id.* An employer's retaliation against an employee for his exercise of this statutory right gives rise to a common law claim by the employee to recover resulting damages. *Lathrop*, 770 P.2d at 1373.

To assert a public policy-based common law claim for retaliatory discharge for the exercise of job-related right, such as worker's compensation benefits, the plaintiff must show:

(1) that she was employed by the defendant;

(2) the defendant discharged the plaintiff; and

(3) the plaintiff was discharged for exercising a job-related right or privilege to which she was entitled.

*Id.* at 1372-73.

In order to survive summary judgment, a plaintiff must "present evidence that her termination was **causally connected** to her filing for benefits under workers' compensation." *Jackson v. Dillard's Dept. Stores, Inc.*, 92 Fed. Appx. 583, 588 (10th Cir. 2003) (affirming summary judgment where the plaintiff's failure to return to work because of lasting effects of work-related injury was not in dispute) (emphasis added); *see also Anderson v. Royal Crest Dairy, Inc.*, 281 F. Supp. 2d 1242, 1250 (D. Colo. 2003) ("the issue on summary judgment is whether [the plaintiff] has come forward with sufficient evidence to create a triable issue of fact as to the retaliatory motivation").

In *Jackson*, the plaintiff had taken a six-month leave of absence, under her employer's leave policy, to nurse her work-related injuries, but did not return after that period. The employer's leave policy called for the termination of employees who failed to return to work after the six-month period, regardless of the reason for the leave. Accordingly, the plaintiff was terminated. In pertinent part, the plaintiff alleged that

13

Defendant terminated her in retaliation for her workers' compensation claim. The appellate court affirmed the district court's grant of summary judgment where the defendant had presented sufficient evidence that the plaintiff was terminated under the leave policy. 92 Fed. Appx. 583 at 588.

In contrast, in *Anderson v. Royal Crest Dairy*, the plaintiff's retaliation claim survived summary judgment where a genuine issue of material fact existed concerning the reasons for the plaintiff's termination. 281 F. Supp. 2d at 1250. The record contained more than a scintilla of evidence that the defendant's risk manager was "upset" that the plaintiff had retained a workers' compensation attorney and plaintiff was asked to reimburse the defendant for medical and dental insurance-premium expenses incurred during the plaintiff's leave of absence. *Id*. at 1245, 1250. Because of this evidence, the trial court concluded that the trier of fact should decide the ultimate question of whether the defendant employer had a retaliatory motive. *Id*.

In the instant case, nearly all of Plaintiff's evidence about a retaliatory motive rests solely on speculation, which is not competent summary judgment evidence, per *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004), and would be inadmissable at trial, Fed. R. Evid. 701 (lay opinions must be "rationally based on the perception of the witness"). In pertinent part, Plaintiff represents that Defendant's Operations Manager, John Woods "believed that Ms. Baros was damaged goods and if she were allowed to continue working she would be re-injured causing Advantage a large financial loss." (Doc. # 19, Plaintiff Undisputed Material Fact ("Plaintiff UMF"),

¶ 18). In support, Plaintiff cites to Exhibit 11 (notice of Plaintiff's "full and final" worker's compensation settlement) and a portion of her own deposition, which was elicited by a question that wholly invited speculation, *e.g.*, "And why do you think Advantage terminated your employment?" (Baros Depo. 146:11-12). In response, Plaintiff states, "Truth be [sic] I **think** it's because they found out that I got the settlement. I **think** that's what triggered it off is that's why, [sic] is because I got a Workman's Comp settlement." (*Id.* at 146:13-16) (emphasis added). When asked about the basis for this belief, Plaintiff stated, "Just because when [John Woods] called me in, that's what he told me . . . ." (*Id.* at 146:19-20). However, beyond Plaintiff's testimony, these assertions are not supported anywhere else in the record.

Citing to Exhibit 12, Plaintiff makes the conclusory allegation that, "On September 29, 2005, [John] Woods set in motion his plan to terminate Ms. Baros and avoid future Worker's Compensation losses." (Doc. #19, Plaintiff UMF, ¶ 19). However, Exhibit 12 to Plaintiff's Motion for Partial Summary Judgment does not support this self-serving inference. Exhibit 12 appears to be John Woods's handwritten note concerning a meeting he allegedly had on September 29, 2005, with Plaintiff, in which Plaintiff was asked to bring in documentation concerning any permanent physical limitations that might affect her ability to do her job safely. This document does not evidence any "plan" to terminate Plaintiff.

Plaintiff further makes the conclusory and totally speculative allegation that, "Without notice to Ms. Baros, Woods and Bob Reinhardt, Safety Supervisor for

15

Advantage, began their effort to influence Dr. Bergland's opinion." (Doc. # 19, Plaintiff UMF, ¶ 24) (citing to Exhibit 2, ¶ 11; Exhibit 15); (*see also* Plaintiff UMF, ¶¶ 25, 26). However, as already discussed, Judge Babcock determined that the cited documents do not support Plaintiff's self-serving distortion of the facts.

Finally, Plaintiff represents that Woods met with Plaintiff to advise her that she would be terminated unless she got her work restrictions lifted and paid back the $60,000 she received in her Worker's Compensation settlement claims. (Doc. # 19, Plaintiff UMF, ¶ 35.) However, Plaintiff merely cites to her own deposition testimony. Beyond this mere scintilla of evidence concerning Defendant's retaliatory termination of Plaintiff, no other supporting evidence exists. Moreover, the record contains evidence that the Unit Picker position's physical demands exceed Plaintiff's physical limitations, and that Plaintiff took medications to help her manage work-induced pain.

Based on the foregoing, Defendant has presented evidence that its stated reasons for terminating Plaintiff were not pretextual. In contrast, even viewing the facts in a light most favorable to Plaintiff, she has not presented evidence that she could perform the unit picker job without exceeding her physical limitations or without further injury. *See Jackson v. Dillard's Dept. Stores, Inc.*, 92 Fed. Appx. 583, 585, 588 n.6 (10th Cir. 2003) (affirming summary judgment where the plaintiff's failure to return to work because of lasting effects of work-related injury was not in dispute and fifteen months lapsed between workers' compensation filings and termination). Termination due to a worker's exercise of his rights is distinct from termination due to an inability to

do the work, "even if such inability is caused by an accident requiring the exercise of worker's compensation rights." *Jackson*, 92 Fed. Appx. at 588 (quoting *Lankford v. True Ranches, Inc.*, 822 P.2d 868, 872 (Wyo. 1992)).  Moreover, an employer is not required to return an injured employee to her job where doing so would violate the undisputed restrictions set forth in the functional capacity evaluation, which would occur in the instant case.  *See Henry v. Modine Mfg. Co.*, No. 97-4215, 2001 WL 487943, at *13 (D. Kan. March 28, 2001).

No reasonable jury would find that Plaintiff's termination was retaliatory given that Plaintiff was employed for more than two years following her filing for workers' compensation benefits.  Further, Plaintiff was employed for about three months after Defendant became aware of the settlement.  Plaintiff has not alleged or presented any evidence that Defendant engaged in a pattern of retaliatory conduct over the relevant time periods, or that Defendant interfered with Plaintiff's worker's compensation filings.  Such lapses in time between Plaintiff's protected activity and her termination undermine Plaintiff's conclusions that her termination was retaliatory.  *See Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (finding a three month period between protected activity and adverse employment action, standing alone, insufficient to establish causation); *see also Marx v. Schnuck Markets, Inc.*, 76 F.3d 324, 329 (10th Cir. 1996) (discussing need to more liberally construe temporal element where the pattern of retaliatory conduct begins soon after the plaintiff's protected activity and only culminates later in actual discharge).

Based on these facts and the record before the Court, no reasonable jury would find that Defendant terminated Plaintiff in retaliation for her workers' compensation filings or for obtaining a full and final settlement of her claims.

## VI.  CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has failed to provide evidence sufficient to establish a genuine issue of material fact concerning Defendant's reasons for terminating Plaintiff's employment.  The Court finds that no reasonable jury would return a verdict in her favor.

Accordingly, Defendant's Motion for Summary Judgment (Doc. #20) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Partial Summary Judgment (Doc. #19) is DENIED AS MOOT.

IT IS FURTHER ORDERED that this case is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that the Final Trial Preparation Conference set for April 9, 2010 and the five-day jury trial set to commence on April 26, 2010 are hereby VACATED.

DATED:  April __8__, 2010.

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge